We'll hear the next case for argument, which is Garcia v. Holder. May it please the Court, my name is Kristen Jackson, and I am pro bono counsel of record for Petitioner Jorge Raul Garcia. Mr. Garcia qualifies for LPR cancellation of removal. Given the unique aspects of special immigrant juvenile status, a very narrow and highly specific form of immigration relief, Mr. Garcia was admitted in any status as of 1992 or at the latest 1994. In light of SIJS, this Court has two distinct legal grounds upon which it can and should grant Mr. Garcia's petition. First, Mr. Garcia's SIJS-based parole rendered him admitted in any status. Mr. Garcia was not inspected and admitted when he entered the United States in 1992 as an 8-year-old, but the subsequent filing and approval of his I-360 visa petition transformed the legal significance of his entry. It changed the entry from an unlawful one into a lawful one. It altered Mr. Garcia's legal standing, and it's clear that Congress intended to do that. The statutory language at 8 U.S.C. 1255 makes this clear. Congress chose to create 8 U.S.C. 1255-H, which changed special immigrant juvenile's entry from unlawful entry to lawful entry. Congress could have chosen to amend 8 U.S.C. 1255-A and simply create a carve-out saying no matter how special immigrant juveniles entered, their entries being unlawful will still allow them to adjust status. So in making this change and altering the entry, Congress allowed Mr. Garcia to be admitted in any status under this Court's precedent. This Court has not, and consistently has not, required that admission in any status must rely upon the strict definition of admission found in 8 U.S.C. 1101-A-13. Instead, an acceptance, an acceptance that transforms legal standing, is an admission under Garcia-Quintero. And just as the acceptance into the Family Unity Program in Garcia-Quintero constituted an admission, so too does Mr. Garcia's SIJS-based parole. Mr. Garcia's SIJS-based parole had very narrow eligibility requirements and also had substantial related benefits. Guided by this Court's recent decisions in Guevara and in Vasquez, the Court should look at these factors and conclude that Mr. Garcia's parole did admit him in any status. The eligibility requirements for SIJS are incredibly narrow. So narrow, in fact, that the year that Mr. Garcia obtained his lawful permanent residency as a special immigrant juvenile, he was one of only 659 children in the entire country to gain status this way. And this was a year when over 850,000 people gained lawful permanent residency. And the eligibility requirements are very rigorous. A juvenile, a child, cannot apply for the status until a state court has made factual findings that create the child's eligibility. So it's not simply a situation where someone may think they're eligible and submit an application. They must go through a rigorous process via a formal state juvenile court proceeding before they can ever apply for special immigrant juvenile status. And Congress has created special benefits for special immigrant juveniles, unique to them, unlike any others. In addition to their eligibility to apply for adjustment of status, they have other benefits specific to special immigrant juveniles. That is limited grounds of inadmissibility that apply to them, and for the ones that do apply, a very generous waiver standard. It also provides protection against deportation under a number of deportation grounds. In light of the TVPRA of 2008, special immigrant juveniles now also are eligible for benefits under the Unaccompanied Refugee Minors Program, and states may be able to be reimbursed for their care. And so these heightened eligibility requirements and the benefits that attach to them far outstrip the situation that this court was recently faced with in Guevara and in Vasquez. In Guevara, the court considered an approved I-765 application, whose only requirement was that there be a pending I-45 application, and whose only benefit was the ability to work. In Vasquez, the court considered an approved I-130 petition, whose only requirement was that the petitioner establish the qualifying legal relationship with a U.S. citizen or lawful permanent resident, and whose only benefit was the ability to apply for adjustment of status. And so Mr. Garcia's SIJS-based parole goes far beyond what the court considered and rejected in Guevara and in Vasquez. Does it go as far as the family, the FUP program in Garcia and Quintero? I mean, we've got Garcia and Quintero on one side and Vasquez and Guevara on the other. Does this case present something in between, or is it your position that it's just tantamount to the FUP program in terms of its requirements? Judge Seabrook, I believe that it is tantamount to the FUP program, although its benefits are not identical. I believe that the benefits that Congress created for special immigrant juveniles were appropriate to the needs that these children presented. Just as for the Family Unity Program beneficiaries who were here awaiting a lawful permanent residence. They were given some protection from deportation, the ability to work, but also the ability to travel in and outside the United States. For special immigrant juveniles, in order for them to apply at all, a juvenile court needs to have determined that it's in their best interest to remain in the United States. So there was not a need for that kind of benefit that was provided in the Family Unity Program. But there clearly was a need for the loosening of the inadmissibility standards, the protection against certain deportation grounds, and the ability for children to gain certain benefits. So while it may not go as far as the Family Unity Program, and certainly is not identical to it, I believe that it goes far enough to qualify as an admission in any status. Counsel, Judge Gould with a question. What's the order of magnitude of the number of juveniles in this status in the U.S.? Judge Gould, the Immigration Service presents statistics every year. In 2010, for the entire year, there were only 1,492 children who obtained special immigrant juvenile status. So while it's an increase from 2,000, it's certainly a small number. In 2010, over a million people obtained lawful permanent residency, and only 1,492 of them were special immigrant juveniles. So while in Garcia, in Guevara, or in Vasquez, the numbers that the court potentially was dealing with, the numbers of people with work permits, the numbers of people who applied for a family-based petition, were relatively large. Here, it's an incredibly narrow group of people. And I think that's significant because in Guevara, the court was clear to point out that the Family Unity Program was intended to benefit a very narrow class of people. And here, the class is as narrow, if not more narrow, than the people who participate in the Family Unity Program. The BIA doesn't agree with our holding that the Family Unity exception should result in someone having been admitted. So do we owe any deference? Certainly, we are bound, and the BIA recognizes that in this circuit, it's bound by our decision in Cuevas-Gaspar. But do we owe any deference to the BIA when it says, we're not going to take that any farther than the Ninth Circuit has already taken it? Because we don't agree with that interpretation. I don't think that that, per se, requires a strict deference. Certainly, in this case, there's no Chevron deference that's given. At most, it would be Skidmore deference. And as the court recently said in Barrios, the order of Skidmore deference to give is based upon how persuasive the reasons are given by the board. And in this case, in Mercados Azueto, recently, the court rejected... I'm sorry. In the recent case of Rivera and Vasquez, the court held and used Garcia-Quintero as good law. I think that the reasons given by the BIA for why it wouldn't extend are not persuasive reasons, and certainly weren't persuasively articulated in the BIA's decision. They were conclusory. The discussion was conclusory and didn't refer to thorough reasoning. It simply said, we won't extend this case, and we also are not convinced by Mr. Garcia's arguments. So I don't... Is there any other circuit weighed in on this? No, Your Honor. There is no published decision in the Ninth Circuit at all about special immigrant juvenile status, and no decision published in any circuit. No. This is an opposition. I think I have half a minute, which I can reserve unless the court has other questions. My question is, there are no circuit opinions. Are there published... Well, it says there could not be a district court opinion, Your Honor. Your Honor, the only district court decision that I located that seemed in any way relevant to this case was one that said the SIJS-based parole status is not exclusively used for adjustment of status. I cited that in my brief, but I haven't located any district court opinion, nor any published Board of Immigration Appeals opinion that addresses this precise issue. And I take it the Supreme Court hasn't commented on it, right? No, Your Honor. All right. Thank you. We'll give you a minute on rebuttal. I have pleased the Court. David Whatmore for the Attorney General. Your Honors, this really is a fairly straightforward case of statutory interpretation. The special immigrant juvenile status, as is defined, has one purpose, and it's to parole an individual who fits that criteria into the United States for purposes of adjusting their status. And when we look at the operative adjustment section, which is section 245H of the INA, 255H of the Code, it says in applying the section to a special immigrant described in section 1101A27J of this title, which is the definition of special immigrant juvenile, such an immigrant shall be deemed for purposes of subsection A of the section to have been paroled into the United States. Your Honors, parole has a specific meaning under the INA. It's defined, and it's defined distinctly from admitted. Therefore, it's unambiguous in this section that merely achieving status by having an approved I-360 and achieving special immigrant status in any way would render such an individual admitted into the United States. The individual merely is paroled for the purpose of allowing the service to consider that application, consider the I-485 application, and during that period during which it's pending, this is the exact same situation that the court looked at in Vasquez de Alicantar in which it said filing an application is merely that until the application. But that was but a step. The juvenile provision is a little bit different. It's not a step along the road toward recognition of status. It's an assumption of jurisdiction, I suppose, in a way. Well, really, I mean, it purely is a parole in the most classic sense. The individual is allowed to remain in the United States while the application is pending, recognizing special circumstances. As opposing counsel discussed, there are very specific rules under which the juvenile must qualify, must become a ward of the state, et cetera. And then during the time after that declaration has been made by the state, during the time in which the 485 application is pending, the individual is deemed paroled. And paroled is not admitted, and when an individual is paroled, they're not admitted in any status for purposes of determining the length of time that they had continuous residence in the United States. The case law is extraordinarily clear on that. Parole is defined very starkly at INA 212D5, and it specifically states it shall not be considered as an admission. You know, this cannot be more clear. Admission is required in order to begin accruing status for purposes of cancellation of removal. But isn't that where the distinction between admitted and admitted in any status becomes of consequence? I don't believe it is of any consequence, Your Honor. One must be admitted to be admitted in any status. One can be admitted in various statuses under various means, but if one is paroled, one can never be admitted. One does not become admitted for purposes of the INA until one, in this case, receives an approved I-485, which the VASCA, Your Honor? Yeah, but in Cuevas-Gaspar, how were the children admitted? Yes, Your Honor. The imputation in Cuevas-Gaspar is really a separate issue. It's not really a statutory interpretation issue. It's one in which this Court carved out a rule based upon whether an individual has resided with the parents, the parents have, in fact, adjusted, and for whatever reason they elected not to adjust the status of that minor. So the Court reasoned that because the children were not, the children had not adjusted. It was simply an error on the part of the parents or neglect to simply not adjust the child, as they would have been eligible since the parent was, in fact, adjusted. And the rationale being that the child is a minor, they're under the custody and control of the parent during that time, and it's not fair to penalize them. Why doesn't the same notion apply here if you're going to impute the timing back to the parents when the petitioner here becomes a ward of the state? Isn't it the same situation? It's not the same, Your Honor. The ward of the state, the state has no legal status. The state has not made a choice to adjust its status and, therefore, impute that status to the minor. Here, the only reason the individual is eligible to adjust is because they've been accepted into this program and they're going through the process of adjusting under these rules. The state is acting in loco parentis. But the state has no adjusted status. So, in other words, I mean, if we look at how this practically happened, and I think this is a great point to make, Your Honor, the petitioner in this case became a ward of the state on July 15, 1994. That was the first date upon which they could impute any sort of status to the state. On July 26, 11 days later, the application was filed. At that point, the person is deemed paroled into the United States. They're not admitted. They're in the pendency of that application. There was, in other words, in the cases that this Court addressed in Cuevas, there was a period during which the person was eligible to adjust, had they merely filed an application. They would have been, at the time that that parent became admitted and going forward, they could have been admitted as well. Here, there's no way that child could have been admitted prior to the date on which that application was approved. There was no delay in this case. Everything worked as it should under this program. The child was deemed a ward, immediately prepared. The papers were prepared. The papers were immediately submitted within a two-week period, and the agency considered the case in due time. At the time the actual application, the 485, was approved, the petitioner gained status. He was admitted by becoming a lawful permanent resident, and that's when he began to accrue time for purposes of cancellation of removal. Counsel, Judge Gould, if I could ask you a question or two, please. Your Honor. First of all, I'm having trouble understanding what is the underlying interest or motive of the government in not wanting to recognize residents under-admitted in any status when you're dealing with this type of a juvenile. What's at the heart of the government's interest here? Because the residency, of course, is just the first step in the cancellation elements, and he wouldn't get it unless he really had good grounds. And I'm having trouble understanding why the government is opposing that first step, you know, in light of various arguments that are made. Your Honor, it's Congress's clearly expressed intent not to deem that person admitted by drafting Section 245H in the way that it did, by specifically delineating that that individual had been paroled rather than admitted during the pendency of the application based upon special immigrant juvenile status. It's as clear-cut as it could be. Congress said they wanted to do it this way, and that's why we're taking this position. We believe the statute is incredibly clear. But have we said that admitted in any status is interpreted to mean something broader than the normal admitted? The only case in which I'm aware that that was actually done would have been Garcia-Quintero, which was, as the Court was discussing earlier, this very unique FUP, this FUP program. And the FUP program has extraordinarily different language from Section 245H on the juvenile status issue. There, the individual is given a voluntary departure status rather than parole, so it's very different as far as parole versus voluntary status. There's also a line, which this Court picked up in its opinion, that allows for the individual under the FUP to travel outside of the United States. And it states that the individual, when returning, will be admitted in the same immigration status. And this Court found that, in fact, the individual was admitted in some status. That language is simply not present here. Here it says paroled. There it arguably says admitted. And it also gives other benefits under the FUP, such as immediate access to be able to work in the United States in a defined two-year period in which the individual may reside here. In contrast with the juvenile immigrant program, all we have is a strict parole. The parole lasts as long as the agency is considering that application. Once that application is granted, the individual is admitted. Once the application is denied, then the individual is deemed to be in the status they were before. It's not a defined period in which they have to apply for anything. Okay. Thank you, counsel. You're welcome, Your Honor. Does the Court have any further questions? We'll submit them in the briefs. Thank you. I'll just take my one moment. In response to Judge Gould's last question, Judge Gould, it's true that in Garcia-Quintero the Court extended the definition of admitted in any status past the strict definition of admission. This was also actually done in Cuevas-Gaspar, and the Garcia-Quintero Court specifically referred to Cuevas-Gaspar when it noted that it was going to move outside of the strict admission definition found at INA 1001A13. For a moment I'd just like to comment on the imputation part of the case, which I didn't address in my primary argument, just to state that in this case what we're dealing with is the question of whether a legal parent can benefit a child through something that would qualify as an admission in any status. And our position is that the state was functioning as the legal parent. Mr. Garcia had no other legal parent, and this parent's determination, this legal parent's decision to make the child eligible for special immigrant juvenile status, while not technically and exactly like Cuevas-Gaspar, is the functional equivalent of what happened in that case. And that the Court should recognize this, and also the rationale behind the imputation, one of the rationales was that a child should not be faulted for failing to secure a legal status. And this Court repeated that rationale in Saucedo just this year, in Barrios, and in other opinions that relate to imputation. So if the Court doesn't have any further questions, thank you. The matter just argued is submitted. The Court appreciates the arguments presented.
judges: Seeborg, Schroeder, Gould